IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


EDGAR MARTINEZ VELLON                                                    PLAINTIFF


                  v.                        Civil No. 13-2195


CORPORAL CHRIS GOODMAN,
Arkansas State Police                                                    DEFENDANT


### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983.  He

proceeds *pro se* and *in forma pauperis.*

Plaintiff challenges the constitutionality of a traffic stop, search, and subsequent arrest that

occurred on March 4, 2013.  Specifically, he maintains the traffic stop was initiated solely because

he is Hispanic.

On June 9, 2014, Defendant filed a summary judgment motion (Doc. 29).  On February 25,

2015, a hearing was held to allow the Plaintiff to respond to the summary judgment motion.

### 1. Background

At the hearing, the Plaintiff offered the following testimony.  On March 4, 2013, Plaintiff left

Little Rock in the company of Leslie Bevel.  As Bevel's driver's license was suspended, she had

called the Plaintiff the prior evening indicating she needed someone with a driver's license to drive

her to Russellville and offered to pay him.  Bevel was initially driving but following a stop in

Conway, Plaintiff took over driving.

The two traveled on Interstate 40 in Bevel's car to Russellville, Arkansas, exiting the

interstate in Russellville.  Bevel provided the directions.  They drove to a hotel that Plaintiff believed

was named the Relax Inn.  Plaintiff parked in the back and waited approximately forty-five minutes

to an hour for Bevel.

When Bevel came out of the hotel, the two left the hotel with the Plaintiff driving and

returned to Interstate 40.  Plaintiff testified he put on the cruise control and was driving the speed

limit.  Plaintiff first observed a state police car, being driven by the Defendant, Arkansas State Police

Corporal Chris Goodman, in the opposite lane of traffic.  Plaintiff then observed the car go through

the median and come out on the interstate traveling in the same direction as the Plaintiff.  Plaintiff

testified he had not been drinking, was not high on drugs, and had slept well.  Plaintiff was nervous

because he believed a warrant for his arrest for absconding parole had probably been issued.

Plaintiff explained that he had not attended a meeting with his parole officer because he did not have

the money to pay his fine.

The police car got into the left hand lane and was passing the car being driven by Plaintiff.

Suddenly, the Defendant decreased speed, fell behind the Plaintiff, and turned on his emergency

lights.  Plaintiff pulled over onto the shoulder and stopped the vehicle.  The Defendant approached

the car from the passenger side and advised the Plaintiff that he had been swerving onto the right

shoulder.  Defendant asked both occupants of the car for their licenses and registration.  When

Plaintiff denied having swerved, the Defendant asked him to step out of the vehicle.

Defendant started repeatedly asking questions such as where Plaintiff and Bevel had come

from, where they were going, etc.  When Defendant checked Plaintiff's records, Defendant

discovered a confirmed parole violation warrant.  Defendant placed the Plaintiff under arrest,

handcuffed him, and put him in the back of the police car.  Plaintiff was not read his rights.  Plaintiff

was not asked to consent to a search of the car.  Plaintiff did not know if the car's owner, Bevel, was

asked to consent to the search or if she had consented to the search.

Defendant asked Bevel to step out of the vehicle and began searching the vehicle.  He brought a cell phone back to the car and asked the Plaintiff if it was his.  Plaintiff responded that it was not and that his was bigger in size and an Android.  Defendant searched some more and then came back and threw Plaintiff's cell phone into his lap.  Defendant continued the search and found a small flashlight.  Plaintiff denied that the flashlight was his and stated that everything in the car was Bevel's.  Plaintiff testified that the only things he had were his cell phone, a pocket knife, a wallet, a lighter, and his glasses.

Inside the flashlight, Defendant found four bags of suspected methamphetamine weighing over 6.2 grams, two OxyContin pills, and one Diazepam pill.  Defendant's Ex. 1 at ¶¶ 12-13.  Defendant also found a glass methamphetamine pipe under the center console.  Id. at ¶ 14.

Another trooper arrived and a tow truck came.  Plaintiff understood that a trooper took Bevel to the next county line and dropped her off.   Plaintiff testified that there was a warrant for Bevel's arrest too, but she was not arrested.  Plaintiff did not know what the arrest warrant was for.  Plaintiff was charged with a parole violation, possession of a controlled substance with intent to deliver, and possession of drug paraphernalia.  *Complaint* (Doc. 4) at 8.

Plaintiff asserted that Bevel should have been arrested and charged with a drug violation.  Plaintiff testified that he felt Defendant only arrested him because he was Hispanic.  Plaintiff remained in the Pope County Jail for about six months.  Although he had planned to contest the drug charge and file a motion to suppress, Plaintiff testified that his public defender indicated that if he filed the motion to suppress and lost he would no longer be offered any plea agreement.

Plaintiff testified he pled guilty to the charges stemming from the stop and arrest.  See also Deft's Ex. 3 at pgs. 9-11.  He served his term of imprisonment and was released in June or July of

last year. Plaintiff's conviction has not been set aside, invalidated, or otherwise called into question.

The video of the dash-camera from Defendant's car was played during the hearing. The video, at least from the camera angle available, does not depict the Plaintiff swerving onto the shoulder.

### 2. Applicable Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See Celotex v. Catrett, 477 U.S. 317, 324 (1986).

### 3. Discussion

Defendant contends he is entitled to dismissal of: (1) the official capacity claim on the grounds of sovereign immunity; (2) the individual capacity claim as barred by Heck v. Humphrey; and (3) the individual capacity claim on qualified immunity grounds.

### (A). Sovereign Immunity

"Claims against individuals in their official capacities are equivalent to claims against the entity for which they work." Gorman v. Bartch, 152 F.3d 907, 914 (8th Cir. 1998). Thus, Plaintiff's official capacity claim against Defendant is a claim against the Arkansas State Police. *Id.* The Arkansas State Police is a state agency entitled to sovereign immunity. See e.g., Simmons v. Marshall, 369 Ark. 447, 451 (2007); Coker v. Arkansas State Police, 734 F.3d 838, 840 (8th Cir. 2013). Defendant is entitled to summary judgment on the official capacity claim.

### (B).  Heck's Favorable Termination Rule

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a claim for damages

for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions

whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the

conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal authorized to make such a determination, or called into question by a

federal court's issuance of a writ of habeas corpus." Id., at 486-87.  The Court noted that if a

successful claim would not demonstrate the invalidity of an outstanding criminal judgment, it should

be allowed to proceed.

In the Eighth Circuit, *Heck* is applied to individuals who are no longer incarcerated. Newmy

v. Johnson, 758 F.3d 1008, 1010 (8th Cir. 2014)(noting a split in circuits on this issue).  The Court

stated: "We recognize that this rule could preclude a damages remedy for an inmate who is detained

for only a short time with limited access to legal resources, but that is a consequence of the principle

barring collateral attacks that was applied in *Heck*." Id. at 1012.

Having determined *Heck* applies to the Plaintiff, the question is whether it bars his claims.

I believe it does.  Here, the Plaintiff maintains that there was no factual basis for the traffic stop and

that the stop was based instead on racial profiling.  In support of his claim, Plaintiff has provided his

own testimony, the dash-camera video, and discovery documents indicating that Defendant had on

one other occasion been accused of racial profiling.

"The rule in *Heck* covers any § 1983 claim that would necessarily require the plaintiff to

prove the unlawfulness of his conviction or confinement.  Thus, the relevant inquiry is not the

constitutional underpinning of the inmate's § 1983 cause of action." Portley-El v. Brill, 288 F.3d

1063, 1067 (8th Cir. 2002)(internal quotation marks and citation omitted).  In *Portley-El*, the

Plaintiff argued that a disciplinary conviction was on account of his race. The Court held that "[i]f Portley-El were to succeed on this claim, he would necessarily demonstrate Brill's bias in affirming his discipline, thereby rendering the disciplinary result invalid, including the loss of good time credits." Id.

The same is true of this case. If Plaintiff were to succeed on this claim, demonstrating that Defendant engaged in racial profiling, thereby rendering the traffic stop invalid, this would necessarily imply the invalidity of the conviction on the drug charges. *Heck* therefore bars his claims. See e.g., Ballenger v. Owens, 352 F.3d 842, 844, 847 (4th Cir. 2003)(holding that *Heck* prohibited plaintiff from asserting claims that defendants unconstitutionally stopped him, searched his automobile, and seized drugs and a handgun because the plaintiff was convicted of trafficking in drugs based on evidence found during a traffic stop); Woods v. Candela, 47 F.3d 545, 546 (2nd Cir. 1995)(alleged constitutional violations during traffic stop that resulted in conviction was *Heck* barred until the conviction was overturned); Cano-Diaz v. City of Leeds, Ala, 882 F. Supp. 2d 1280, 1288-89 (N.D. Ala. 2012)(claim that traffic stop was based on ethnicity would implicate the validity of her conviction); Barr v. Corradino, Civil No. 1:12-cv-2006, 2015 WL 478500, *8 (N.D. Ga. February 3, 2015)("success on Plaintiff's claim that the initial traffic stop was unlawful, alone, would implicate the validity of all the convictions because there could have been no criminal charges, and thus no convictions, without the traffic stop"); Collins v. Smith, Civil No. 12-cv-801, 2012 WL 3765135 (S.D. Ill. August 29, 2012)(Claim that the original traffic stop was unconstitutional could not proceed under *Heck* because the ensuing search was the only reason drugs were found and if the evidence was rendered unuseable, his conviction could not stand); Young v. Ingalls, Civil No. 10-5036, 2010 WL 4269482 (W.D. Ark. Sept. 22, 2010)(applying the reasoning

-6-

of *Heck* to a claim that an officer lacked probable cause for an arrest or that the arrest was racially motivated).

As the individual capacity claims are barred by Heck, it is unnecessary to address the issue of qualified immunity.

**4. Conclusion**

For the reasons stated, I find that the motion for summary judgment (Doc. 29) should be granted. The official capacity claims should be dismissed with prejudice. The individual capacity claims should be dismissed without prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of March 2015.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE